UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ARY McMILLAN and PAUL E. SMITH,
individually and on behalf of all others
similarly situated

        Plaintiffs,

v.                             CASE No. 8:13-CV-1520-T-35TGW

MASRTECH GROUP, INC.,
a Florida corporation, and
AHMED MOHAMED,

        Defendants.

_____

## REPORT AND RECOMMENDATION

The plaintiff alleges that the defendants failed to pay him minimum and overtime wages in violation of the Fair Labor Standards Act, the Florida Minimum Wage Act, and the Florida Constitution. The defendants did not defend this case. Consequently, the court granted the plaintiff's Motion for Entry of Default Judgment (Doc. 13). The determination of the amount of the plaintiff's damages, his attorney's fee, and costs was referred to me.

The plaintiff established that he sustained damages of $7,617.98. The plaintiff is also entitled to an attorney's fee of $8,820, and costs of $488.39. I therefore recommend that default judgment be entered in the plaintiff's favor and against the defendants in the amount of $16,926.37.

I.

On June 11, 2013, the plaintiff filed a complaint alleging that the defendants failed to pay him the legally mandated minimum hourly wage and overtime compensation for hours worked in excess of 40 in a workweek, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 206 and 207; the Florida Minimum Wage Act ("FMWA"), Fla. Stat. 448.110; and the Florida Constitution, Article X, Section 24 (Doc. 1).[1] The plaintiff seeks unpaid wages, liquidated damages, declaratory relief, and his attorney's fee and costs.[2]

On June 25, 2013, the defendants were served with the summonses and complaint (Docs. 5, 6). However, neither defendant filed a

---

[1] The complaint was originally filed on behalf of two plaintiffs. At the evidentiary hearing, plaintiff's counsel notified the court that plaintiff Paul E. Smith is deceased. Consequently, this report refers only to plaintiff McMillan.

[2] The request for declaratory relief was denied (Doc. 13).

response to the complaint or otherwise appeared in this case. Consequently, the plaintiff filed a Motion for Default against the defendants pursuant to Rule 55(a), F.R.Civ.P. (Doc. 9), which was entered by the Clerk (Doc. 11).

Thereafter, the plaintiff filed a Motion for Default Judgment (Doc. 12). Neither defendant filed a response to that motion. Consequently, the court granted the Motion for Default Judgment (Doc. 13). In this regard, the court found that the plaintiff's well-pled allegations that he was a non-exempt employee who was not paid the minimum wage mandated by law or compensated for hours worked in excess of 40 during a workweek established the defendants' violations of the FLSA, FMWA, and Article X, Section 24 of the Florida Constitution (Doc. 13, p. 4). The matter was then referred to me to conduct an evidentiary hearing and issue a report and recommendation on the amount of damages, his attorney's fee, and costs (id., pp. 5, 6).

Accordingly, an evidentiary hearing was scheduled to establish the plaintiff's damages (Doc. 14). A copy of that Order was sent to the defendants (id.), but it was returned as undeliverable.

At the evidentiary hearing, plaintiff McMillan appeared with his counsel (see Doc. 15).  No one appeared at the hearing on behalf of either defendant (id.).

The plaintiff was the only person to testify.  The plaintiff stated that he was employed by the defendants as a cook at the 22nd Street Gyros restaurant in Ybor City from November 29, 2012, until January 21, 2013. When defendant Mohamed hired him, the plaintiff understood that he would be paid the minimum legal hourly wage plus a bonus of $50 for the first month of employment, $75 the second month, and $100 the third month. However, the plaintiff testified that, in fact, Mohamed paid him only $50 a week, which increased to $75 weekly during the second month of his employment.

The plaintiff stated that the first time Mohamed paid him $50, Mohamed told him that the bank was not open and that he would "take care of" the plaintiff the following week.  However, Mohamed continued to pay him $50 weekly.  At some point, Mohamed told the plaintiff that $50 was what he was paying him, even though the plaintiff had told Mohamed that he should be paid the minimum legal wage.

The plaintiff stated that he regularly worked seven days a week, for an average of ten and one-half hours daily. In addition to working as a cook, the plaintiff filled in as a dishwasher, cashier, and "all around person." The plaintiff testified that his work schedule was from 9:30 a.m. until 7:30 p.m., Monday through Friday; 9:30 a.m. to 9:30 p.m. on Saturdays; and Sundays from 9:30 a.m. to 6:30 p.m. He received a thirty-minute break. The plaintiff stated, moreover, that some days he worked longer, depending on the volume of customers and staffing at the restaurant. The plaintiff testified that he quit the job on January 21, 2013. He stated that he took off from work only four days while employed for the defendants.

At the end of the hearing, plaintiff's counsel was directed to file a memorandum setting forth the plaintiff's requested damages, attorney's fee, and costs. After several months passed, the court ordered the plaintiff to submit the memorandum (Doc. 16). The plaintiff, in accordance with that Order, submitted a Motion for Award of Attorney's Fees and Costs (Doc. 17) and a Memorandum in Support of Damages (Doc. 18). The plaintiff requests an award of damages totaling $9,611.68, an attorney's fee of $8,820, and costs totaling $488.39 (id.).

II.

The plaintiff seeks damages pursuant to the FLSA and the FMWA (Doc. 18, pp. 3-5). The FLSA provides that a prevailing employee is entitled to unpaid minimum wages, overtime compensation, and liquidated damages. 29 U.S.C. 216(b). Additionally, the FMWA provides that aggrieved persons shall recover the full amount of any unpaid back wages plus the same amount as liquidated damages. Fla. Stat. 448.110(6)(c)(1).

With regard to the amount of those damages, the plaintiff has given sworn testimony of the hours he worked and the amount he was paid. Specifically, the plaintiff testified that he worked for the defendants from November 29, 2012, through January 21, 2013, during which time his regular work schedule was 9:30 a.m. to 7:30 p.m., Monday through Friday; 9:30 a.m. to 9:30 p.m., on Saturday; and 9:30 a.m. to 6:30 p.m., on Sunday, with a daily thirty-minute break. The plaintiff averred that the defendants paid him $50 per week in 2012 and $75 weekly in 2013. Thus, the plaintiff's evidence shows that the defendants did not come close to paying the plaintiff the legally mandated minimum hourly wage, and that the plaintiff worked many overtime hours for which he did not receive any overtime compensation.

There is no reason to disbelieve the plaintiff's testimony. Importantly, neither defendant, each of whom has the burden to make and preserve time records, 29 U.S.C. 211(c), has produced time records or otherwise controverted this evidence.

Admittedly, the damages calculations below are approximations. Furthermore, there is an inconsistency between the plaintiff's testimony that he worked an average of ten and one-half hours daily, and the average number of hours based on the plaintiff's work schedule, which amounts to 9.6 hours.[3] However, that discrepancy is reasonably remedied by relying upon the more specific evidence of the plaintiff's daily work schedule.

Importantly, the Supreme Court has stated that, when an employer, who is usually in a superior position to keep records of employee wages and hours, fails to produce accurate records, "[t]he solution ... is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work." Anderson v. Mt.

---

[3] The average weekly hours is computed as follows: Monday-Friday: 9.5 hours daily (after excluding break) x 5 days = 47.5 hours; Saturday: 11.5 hours (after excluding break); and Sunday: 8.5 hours (after excluding break), for a total of 67.5 hours. That sum, divided by 7 days, amounts to an average of 9.6 work hours daily.

Clemens Pottery Co., 328 U.S. 680, 687 (1946).  Therefore, it sets forth a burden-shifting test where "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Id.

The burden then shifts to the employer to bring forth either evidence of the precise amount of work performed, or evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. Id. at 687-88.  "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may be only approximate." Id. at 688; see Hodgson v. Ricky Fashions, Inc., 434 F.2d 1261, 1264 (5th Cir. 1970) (plaintiffs' testimony as to the number of overtime hours weekly and the number of weeks that schedule was maintained "is sufficient to provide a basis for a reasonable determination of the unpaid wages"); Allen v. Board of Public Education for Bibb County, 495 F.3d 1306, 1317-18 (11th Cir. 2007) (statements regarding the amount and extent of uncompensated work in declarations and in deposition testimony satisfy the employee's burden on summary judgment).

-8-

As indicated, neither defendant presented any evidence regarding the amount of work performed by the plaintiff or otherwise rebuts the plaintiff's averments. Therefore, the plaintiff's testimony is appropriately accepted as establishing damages "as a matter of just and reasonable inference" as follows:

A. Unpaid minimum hourly wage

The plaintiff testified that the defendants paid him $50 per week in 2012 and, during a typical week, he approximately worked 67.5 hours, which equates to an hourly wage of 74 cents. Thus, according to the plaintiff's testimony, he was paid $6.93 less per hour than the 2012 minimum legal wage of $7.67. Based on an average work day of 9.6 hours, the plaintiff was underpaid $66.53 for each work day in 2012 (9.6 x $6.93).[4] The plaintiff states that he worked 30 days in 2012 (Doc. 19, p. 6), so the sum of unpaid minimum wages for 2012 is $1,995.90 (30 x $66.53). After doubling this sum for liquidated damages, the amount of damages for failure to pay the minimum legal hourly wage in 2012 is $3,991.80 ($1,995.90 x 2).

_____

[4] The plaintiff calculated his unpaid back wages based on an average of 10.5 work hours daily. As indicated, it is appropriate to accept the plaintiff's more specific testimony of his regular work schedule, which amounts to an average work day of 9.6 hours.

The plaintiff testified that the defendants paid him $75 weekly in 2013 (Doc. 19, p. 6). Based on a typical work week, that amounts to an hourly wage of $1.11 in 2013, which is $6.68 less per hour than the minimum legal wage of $7.79 in 2013. Accepting the testimony that the plaintiff worked an average of 9.6 hours daily, the plaintiff was underpaid $64.13 for each work day in 2013 (9.6 x $6.68). According to the plaintiff, he worked 20 days in 2013 (Doc. 19, p. 6), which results in an underpayment of $1,282.60 (20 x $64.13). After doubling this sum for liquidated damages, the amount of damages for failure to pay the minimum legal hourly wage in 2013 is $2,565.20 ($1,282.60 x 2). Therefore, the total damages for failing to pay minimum legal hourly wage in 2012 and 2013 is $6,557.00 ($3,991.80 + $2,565.20).

B. Overtime

The plaintiff contends that he is entitled to overtime wages for three weeks in 2012, and two weeks in 2013 (Doc. 19, pp. 6-7). The evidence reasonably supports this contention, as the plaintiff testified that he took off from work only four days during his employment with the defendants. Furthermore, as indicated, the plaintiff's testimony supports the finding that

he worked approximately 67.5 hours for each of those weeks. Consequently, the plaintiff is due overtime pay for 27.5 hours for each of those weeks.

FLSA requires that an employer pay overtime at a rate not less than one and one-half times the regular rate at which he is employed. 29 U.S.C. 207(a). Therefore, based on the minimum legal hourly wage of $7.67 in 2012, the minimum overtime rate in 2012 was $11.50 (1.5 x $7.67). After subtracting straight time of $7.67 per hour, which was included in the unpaid minimum wage damages (see also Doc. 19, p. 6 n.3), the additional overtime owed the plaintiff is $3.83 per hour for work in 2012 (supra, pp. 9-10). Based on 27.5 overtime hours weekly, the additional overtime pay due is $105.33 weekly ($3.83 x 27.5). That sum is multiplied by three for each week of overtime in 2012, for total unpaid overtime wages in 2012 of $315.99 ($105.33 x 3). After doubling this amount for liquidated damages, the amount of damages for failure to pay overtime pay in 2012 is $631.98.

Additionally, for each overtime hour worked in 2013, the plaintiff was entitled to an extra $3.90 (time and one-half in 2013 was $11.69 based on the legal minimum hourly rate of $7.79, and the straight time of $7.79 was already accounted for in the unpaid minimum wage damages

above).  Based on 27.5 overtime hours weekly, the additional overtime pay

due in 2013 is $107.25 weekly ($3.90 x 27.5).  That sum is multiplied by two

to account for two weeks of overtime in 2013, for total unpaid overtime

wages in 2013 of $214.50 ($107.25 x 2).  After doubling this amount for

liquidated damages, the amount of damages for failure to pay overtime pay

in 2013 is $429.00.

Therefore, the total damages for failure to pay overtime wages

is $1,060.98 ($631.98 + $429.00).  That sum, in addition to the plaintiff's

minimum hourly wage damages of $6,557.00, equals total damages of

**$7,617.98**

## C. Prejudgment Interest

Additionally, the plaintiff requests prejudgment interest of

$422.40 (Doc. 18, p. 7).  However, the plaintiff has not shown he is entitled

to this relief.  To the contrary, the Eleventh Circuit holds that "a plaintiff may

not recover prejudgment interest in a private FLSA action."  Lindsey v.

American Cast Iron Pipe Co., 810 F.2d 1094, 1101 (11th Cir. 1987); see also

Barcellona v. Tiffany English Pub, Inc., 597 F.2d 464, 469 (5th Cir. 1979).

Furthermore, the plaintiff has not identified any legal authority that he is

entitled to prejudgment interest pursuant to the FMWA.   Therefore, I recommend that the prejudgment interest computation proposed by the plaintiff (which is also inaccurate) be rejected.

In summary, neither defendant has challenged the sufficiency of the evidence or otherwise objected to recovery of these damages.  I therefore recommend that the plaintiff be awarded damages totaling **$7,617.98.**

III.

The plaintiff seeks an award of his attorney's fee pursuant to the FLSA (Doc. 17, p. 3).   The FLSA directs that a prevailing plaintiff be awarded a reasonable attorney's fee.   29 U.S.C. 216(b).  The plaintiff is clearly the prevailing party in this case, as his Motion for Default Judgment has been granted as to all of his claims (Doc. 13).  See Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 532 U.S. 598, 603 (2001).

The federal lodestar approach is the foundation for setting reasonable fee awards pursuant to the FLSA.   Padurjan v. Aventura Limousine & Transportation Service, Inc., 441 Fed. Appx. 684, 686 (11th Cir. 2011).  This method requires the court to determine a "lodestar figure" by

multiplying a reasonable hourly rate for the services of the prevailing party's attorney by the number of hours reasonably expended on the litigation. Id.; Norman v. Housing Authority of the City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988).

The fee applicant bears the burden of presenting satisfactory evidence to establish that the requested rate is in accord with the prevailing market rate and that the hours are reasonable. Norman v. Housing Authority of the City of Montgomery, supra, 836 F.2d at 1299, 1303. Once the lodestar is determined, the court considers whether an adjustment of the lodestar for the results obtained is appropriate. Moton v. Nathan & Nathan, P.C., 297 Fed. Appx. 930, 932 (11th Cir. 2008). However, "[a] properly calculated lodestar amount 'is itself strongly presumed to be reasonable.'" Galdames v. N&D Investment Corp., 432 Fed. Appx. 801, 806 (quoting Resolution Trust Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1150 (11th Cir. 1993)).

As indicated, the plaintiff contends that he is entitled to a court awarded attorney's fee of $8,820 (Doc. 17, p. 6; Doc. 17-1). This sum comprises 25.2 hours of legal services by attorney Bradley A. Tobin at an hourly rate of $350 (Doc. 17-1).

A. <u>Hourly Rates</u>

Federal courts first determine a reasonable hourly rate for the services of the prevailing party's attorney. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." <u>Norman</u> v. <u>Housing Authority of City of Montgomery</u>, <u>supra</u>, 836 F.2d at 1299.

The applicant bears the burden of "supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate." <u>Id</u>. at 1303. Evidence of prevailing rates for comparable services can be adduced either through direct evidence of charges by lawyers under similar circumstances or by opinion. <u>Id</u>. at 1299. "[T]he best information available to the court is usually a range of fees set by the market place." <u>Id</u>. at 1301. Furthermore, "[t]he court ... is itself an expert on the question [of attorney's fees] and may consider its own knowledge and experience concerning reasonable and proper fees..." <u>Id</u>. at 1303.

Plaintiff's counsel requests a fee based on an hourly rate of $350 (Doc. 17-1, ¶16). Tobin is an associate with the law firm of Feldman

Morgado, P.A.  He has practiced law since 1996 in state and federal courts throughout Florida, and he specializes in employment litigation and commercial matters (id., ¶¶3, 5, 12, 13, 14).  Tobin's customary and usual hourly rate since 2012 has been $350 (id., ¶6).

Tobin avers that he is "familiar with the market rates for attorneys with my years of experience ... in the Tampa Bay area" and opines that his rate of $350 is in line with such market rates (id., ¶16).  In support of the reasonableness of Tobin's hourly rate, Tobin cites two state court cases where he was awarded an hourly rate of $350, and two cases in which other counsel in his law firm, who have less legal experience than him, were awarded an hourly rate of $350 (Doc. 17, pp. 7-8; Doc. 17-1, ¶¶7, 17). Additionally, Tobin argues that the fact he customarily charges an hourly rate of $350 in non-contingency matters also supports the reasonableness of the requested hourly rate (Doc. 17, pp. 6-7; Doc. 17-1, ¶¶6, 15).  See Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 328 (5th Cir. 1995) (an attorney's regular rate is to be considered in determining the reasonableness of a requested hourly rate).

Considering my knowledge of prevailing market rates in Tampa and the lack of opposition, a reasonable hourly rate for plaintiff's counsel is $350. See Norman v. Housing Authority of the City of Montgomery, supra, 836 F.2d at 1303 (the court is itself an expert).  Thus, as someone who regularly handles attorney fee motions, it is my experience that, a reasonable hourly rate in this market for non-complex FLSA litigation ranges from $250 to $350.  Although counsel's requested rate is on the high side, taking into consideration counsel's years of legal experience, the contingency nature of the representation, and the lack of opposition, an hourly rate of $350 is reasonable.

Accordingly, for the foregoing reasons, I recommend that the hourly rate of plaintiff's counsel Bradley A. Tobin be set at $350.

B.  Reasonableness of the Number
of Hours Expended

The second half of the lodestar equation requires the court to calculate the number of hours reasonably expended on the litigation. Thus, "[e]ven when a party prevails, the district court still must determine whether time was reasonably expended, and if it was not, that time should be excluded

from the fee calculation." Perez v. Carey International, Inc., 373 Fed. Appx. 907, 911 (11th Cir. 2010).

It is the fee applicant's burden to document adequately the hours expended. Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). In this regard, "fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." Norman v. Housing Authority of City of Montgomery, supra, 836 F.2d at 1303.

The plaintiff seeks compensation for 25.2 hours of work performed in this case by attorney Tobin (Doc. 17-1, ¶10). This time was spent drafting pleadings and motions, communicating with the client, and preparing for, and attending, the evidentiary hearing (id., pp. 5-6).

Plaintiff's counsel states that he has reviewed his time records and the hours claimed are "well grounded in fact and justified" (Doc. 17, p. 6). Further, plaintiff's counsel included those records with the motion (Doc. 17-1, pp. 5-7), and a review of those time records does not reveal any

excessive or unreasonable time entries.[5] Moreover, there is no objection by the defendants to the hours requested. Therefore, I recommend that the plaintiff be compensated for the requested 25.2 hours of legal work. Consequently, the lodestar for this matter is computed by multiplying the 25.2 hours expended in this case by the hourly rate of $350, for a sum of $8,820.

After the lodestar is determined, the court must consider the necessity of an adjustment for results obtained. However, as reiterated by the U.S. Supreme Court in Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552 (2010), there is a "strong" presumption that the lodestar reflects a reasonable statutory fee. Further, the plaintiff does not request an increase of the lodestar. Accordingly, I recommend that the plaintiff be awarded an attorney's fee of $8,820.

---

[5]In particular, it is noted that time spent preparing the motion for attorney's fees and costs is compensable. Thompson v. Pharmacy Corp. of Am., Inc., 334 F.3d 1242, 1245 (11th Cir. 2003) (where attorney fees are allowed to the prevailing party by federal statute, the compensable fees include time spent litigating both the entitlement to and amount of fees incurred); see, e.g., Wolff v. Royal American Management, Inc., 545 Fed. Appx. 791, 796 (11th Cir. 2013), cert. denied, 134 S.Ct. 1373 (2014) (awarding "fees for litigating fees" in a FLSA case).

IV.

Finally, the plaintiff's law firm presented evidence that it incurred $488.39 in costs for the filing fee, postage, photocopying and service of process (Doc. 17-1, ¶10; Doc. 17-2).  Pursuant to the FLSA, plaintiff's counsel's litigation costs are recoverable.  See Dale v. Comcast Corp., 498 F.3d 1216, 1221 n.8 (11th Cir. 2007); Wales v. Jack M. Berry, Inc., 192 F. Supp.2d 1313 (M.D. Fla. 2001); Cappeletti Bros., Inc. v. Broward County, 754 F.Supp. 197, 198 (S.D. Fla. 1991). The defendant has not challenged any of the listed expenses as non-compensable. Therefore, the requested costs are appropriately awarded to the plaintiff.  Accordingly, I recommend that the judgment include $488.39 in costs.

V.

For the foregoing reasons, I recommend that the Plaintiff's Motion for Award of Attorney's Fees and Costs (Doc. 17) be granted, and that default judgment be entered against the defendants in the amount of $16,926.37, plus post-judgment interest calculated at the statutory rate.  See

28 U.S.C. 1961.

Respectfully submitted,

THOMAS G. WILSON

DATED: AUGUST 5, 2014   UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. 636(b)(1).